IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENDA M. GORDON, an individual and
resident of Oregon and U.S. Citizen,

                 Plaintiff,

      v.

ARNE DUNCAN, Secretary of Education, *et al*,

                 Defendants.

CV-09-1319-ST

FINDINGS AND
RECOMMENDATIONS

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Brenda M. Gordon ("Gordon"), filed this action on November 9, 2009, alleging

a variety of claims totaling more than $3 million against:  (1) two United States agencies

(Department of Education ("DOE") and Department of the Treasury ("DOT")) and their

respective Secretaries (Arne Duncan and Timothy Geithner); (2) four private companies

(Financial Asset Management Services ("FAMS"), Van Ru Credit Corporation ("Van Ru"),

Pioneer Credit Recovery, Inc. ("Pioneer"), and CollectCorp, Inc. ("CollectCorp")) that have

1 - FINDINGS AND RECOMMENDATIONS

acted as General Services Administration ("GSA") collections contractors for federal student

loans and their individual officers (Jerry Hogan, President and Chief Executive Officer of

FAMS; Albert Rubin, Chief Executive Officer of Van Ru; Earnest H. Wickline, Jr., Chief

Executive Officer of Pioneer; and Nicholas C. Wilson, Vice President of CollectCorp); (3) the

California Student Aid Commission ("CSAC") and its Executive Director (Diana Fuentes-

Michel); (4) the Board of Trustees of California State University; and (5) unnamed "OTHERS."

Complaint (docket #8), p. 1.[1]

Between the fall of 1989 and the spring of 1993, Gordon attended California State

University, Northridge.  Plaintiff's Ex. 32, pp. 2-3 (docket #18-10).  During that time, she took

out multiple student loans totaling between $10,000.00 and $25,000.00.  Complaint, ¶ 19;

Plaintiff's Exs. 11-A, p. 2 (docket #18-8), Ex. 15 (docket #18-9).  Gordon complains that

defendants improperly added loans discharged prior to 1989 to her loan balance,[2] unlawfully

shortened the grace period for repayment of her loans from six months to two months, repeatedly

refused her an income-dependent repayment plan, failed or refused to discharge the loans

pursuant to 20 USC § 1087(a) when she began receiving social security disability income

("SSDI") in 2000, improperly offset portions of her SSDI between 2002 and 2005, and then

tacked on approximately $8,000.00 in additional fees during a three-year period of economic

---

[1]  In addition to her initial Complaint, Gordon filed 42 exhibits to the Complaint in mid-December 2009.  References to those exhibits are to the exhibit numbers and the docket number.

[2]  Plaintiff's exhibits list a loan from 1964 and a loan from the early 1970's, both of which Gordon apparently contends were discharged prior to 1989 when she began taking out the bulk of the loans at issue here.  One of Gordon's claims is that the amounts of one or both of those loans was improperly added to her loan balance.  Complaint, ¶ 30 and Plaintiff's Exs. 3, p. 2 (docket #18-5), 4, p. 2 (docket #18-6), 11-A, p. 2 (docket #18-8), 12, p. 2 (docket #18-8), 15, p. 1 (docket #18-9), and 42 (docket #18-12).

2 - FINDINGS AND RECOMMENDATIONS

hardship deferment.  As a result of these allegedly improper actions, defendants assert that

Gordon owes over $60,000.00 on a debt that initially was a fraction of that amount.

Based on these allegations, Gordon alleges a variety of claims against all 15 named

defendants, including claims for violation of:  (1) Subchapter IV, Part B of the Higher Education

Resources and Student Assistance Act of 1965 ("HEA"), 20 USC §§ 1071-1087; (2) the Fair

Debt Collection Practices Act ("FDCPA"), 15 USC §§ 1692-1692p; (3) the RESTATEMENT

(SECOND) OF CONTRACTS; (4) the Uniform Commercial Code ("UCC") §§ 1-302-1-304; (4) the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC §§ 1961-1968; and

(5) the Fourteenth Amendment to the United States Constitution.  Gordon also purports to allege

a claim for civil conspiracy, as well as the intentional torts of unconscionability, negligence,

fraud, defamation, invasion of privacy, and intentional infliction of emotional distress.  She

seeks various forms of relief including:  (1) declaratory and injunctive relief; (2) economic,

noneconomic, and special damages exceeding $3 million; (3) sanctions against CSAC which

guaranteed and, in mid-1994, paid an insurance claim on her student loans; and (4) an order that

she be awarded her Bachelor of Arts diploma from California State University *nunc pro tunc*

June 1993.

In addition to her Complaint (docket #8), Gordon also filed two separate "Attachments"

to the Complaint which further explain her request for declaratory and injunctive relief (docket

#8-1) and her request for certain "corrective action" (docket #19).

Although this court granted *In Forma Pauperis* status to Gordon, it delayed service on

any defendant pending its review of the Complaint.  Order to Proceed *In Forma Pauperis*

(docket #9).  For the reasons that follow, all claims against each defendant should be dismissed

with prejudice, with the exception of potential FDCPA and tort claims against the collection

agencies and their officers for acts falling within the statute of limitations and a negligence claim

against the United States.  As a result, Gordon should be ordered to file an Amended Complaint

prior to allowing service on any defendant.

## STANDARDS

Under 28 USC § 1915(e)(2)(B), a complaint filed *in forma pauperis* must be dismissed

before service of process if it is frivolous, fails to state a claim on which relief may be granted or

seeks monetary relief against a defendant who is immune from such relief.  *Neitzke v. Williams*,

490 US 319, 324 (1989); *Jackson v. State of Ariz.*, 885 F2d 639, 640 (9th Cir 1989).  A complaint

is frivolous "where it lacks an arguable basis in law or in fact."  *Neitzke*, 490 US at 325; *Lopez v.*

*Dept. of Health Services*, 939 F2d 881, 882 (9th Cir 1991); *Jackson*, 885 F2d at 640.

In determining whether a complaint is frivolous, this court is mindful of the requirement

to liberally construe the allegations of a  *pro se* plaintiff and to afford the plaintiff the benefit of

any doubt.  *Lopez*, 939 F2d at 883.  However, under FRCP 8(a)(2), all complaints must contain

"a short and plain statement of the claim showing that the pleader is entitled to relief."  A

complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests."  *Conley v. Gibson*, 355 US 41, 47 (1957).

## FACTUAL BACKGROUND

One difficulty with Gordon's Complaint is that she does not identify any particular action

taken by any particular defendant at any particular time.  Instead, she makes sweeping

allegations that "defendants" took various actions which spanned the past 16 years "beginning in

1993 to the present."  Complaint, ¶ 19.  Some time in 1993, defendants shortened her grace

period from six to two months.  *Id*, ¶ 19(b).  Between 2002 and 2005, over $5,000.00 of her

SSDI was offset against the loan balance.  *Id*, ¶ 19(c).  While Gordon's loans were in a period of

economic hardship deferment between 2005 and 2008, defendants added additional fees of

approximately $8,000.00 to her loan balance.  *Id*, ¶ 19(c).

    As best as can be discerned from Gordon's exhibits, the chronology of relevant events is

as follows:  Gordon finished her spring term of classes at California State University,

Northridge, on May 27, 1993, and took her last final on June 5, 1993.  Plaintiff's Exhibit List, p.

1 (docket #18-2).  By letter dated May 30, 1993, American Educational Services ("AES"), the

student loan servicer for Great Western Bank (*see* Plaintiff's Ex. 4, p. 3 (docket #18-6)),

informed Gordon that the deferment of her loan account was due to expire on June 30, 1993.

Plaintiff's Ex. 1.  In a later letter dated July 22, 1993, AES advised Gordon that it had placed her

student loan account on an unemployment deferment through September 30, 1993.  Plaintiff's

Ex. 1, p. 2 (docket #18-2).  However, Gordon did not receive those letters until December 1993

because she was moving from state to state looking for work.

    On January 14, 1994, a few weeks after receiving their two notices, Gordon sent AES a

request to maintain her loan account in deferred status.  *Id*.  However, by that time, AES had

already started sending Gordon delinquency notices.  Plaintiff's Ex. 25 (docket #18-9).

    On June 5, 1994, Gordon again sent AES and CSAC a letter requesting deferment.

Plaintiff's Ex. 30 (docket #18-10).  Although she had secured employment in May 1994, she was

apprehensive about her future at that job and hoped to begin making payments on her loan

account in August 1994.  *Id*.

AES assigned the loan account to the guaranty agency, CSAC, on May 10, 1994.
Plaintiff's Ex. 35 (docket #18-11).  Despite her request for another deferment, Gordon's student
loan account was declared in default in July 1994.  CSAC paid an insurance claim to the lender.
Plaintiff's Exs. 3, p. 2 (docket #18-5), 4, p. 2 (docket #18-6), and 25 (docket #18-9).  At that
time, interest on the loans of over $3,000.00 was capitalized, increasing the principal balance to
nearly $25,000.00.  Plaintiff's Ex. 4, p. 2 (docket #18-6).

On July 27, 1999, in response to a letter from Gordon, the DOE sent a letter advising her
that, due to the default, her loans were due and payable in full.  Plaintiff's Ex. 2 (docket #18-4).
In an effort to work out an affordable repayment plan, the DOE sent Gordon a "Statement of
Financial Status," instructing her to complete it and return it to Pioneer.[3]  *Id*.

It is unclear how long Pioneer attempted to collect on Gordon's account.  On
September 21, 1999, CSAC assigned Gordon's loan account to the DOE.  Plaintiff's Ex. 35
(docket #18-11).  Following that assignment, it appears that DOE hired a series of other
collection agencies to attempt to collect on Gordon's student loan account.  Multiple such
agencies initiated contact with Gordon over the next six or seven years, including Education
Credit Services, Inc. (January 11, 2001, Plaintiff's Ex. 5, p. 1 (docket #18-7)), FAMS
(October 23, 2001, Plaintiff's Ex. 6 (docket #18-7 and July 1, 2002, Plaintiff's Ex. 13 (docket
#18-8)), Van Ru (September 27, 2002, Plaintiff's Ex. 8 (docket #18-7), October 23, 2002,
Plaintiff's Ex. 14 (docket #18-8), and January 13, 2003, Plaintiff's Ex. 39 (docket #18-12)), and
NCO Financial Systems, Inc. (December 22, 2006) (Plaintiff's Ex. 9 (docket #18-7)).

---

[3]  Multiple statements of financial status dated June 21, 2000, July 17, 2002, August 15, 2005, and September 26, 2005,
are among Gordon's exhibits.  Plaintiff's Ex. 2 (docket #18-4).

In late 2000, Gordon made two payments totaling $60.00 on her loan account.  Plaintiff's Ex. 33 (docket #18-10).  About a year and a half later, the DOT began offsetting a portion of Gordon's SSDI payments against her outstanding loan balance.  From April 2002 until October 2005, over $5,000.00 in payments from Gordon's SSDI was offset against her loan balance.  *Id*; Plaintiff's Exs. 18-24 (docket #18-9).

On June 6, 2002, Gordon submitted a Total and Permanent Disability Cancellation Request to cancel her loans due to a disability which rendered her unable to work as of May 30, 1998.  Plaintiff's Ex. 11 (docket #18-7).  The DOE sent a letter to Gordon's doctor requesting additional information, but did not receive a response and consequently denied Gordon's request for a loan discharge.  Plaintiff's Ex. 11A, p. 4 (docket #18-7).

By letter dated July 18, 2002, an attorney with the Northwest Justice Project notified FAMS that Gordon was exercising her rights under the FDCPA and had no income other than SSDI and no property to pay the debt and also asked FAMS to cease all communication with Gordon.  Plaintiff's Ex. 36 (docket #18-11).

Gordon's loan account was recalled from Van Ru on April 3, 2003.  (Plaintiff's Ex. 4, p. 4 (docket #18-6).

On February 14 and November 16, 2005, in response to complaints by Gordon regarding harassment by the DOE's contract collection agencies and a dispute over her loan account, the DOE sent letters to Gordon explaining the loan history in detail, notifying her that financial hardship does not excuse nonpayment, but granting her a 12-month financial hardship and advising that the offsets against her SSDI had stopped effective October 12, 2005.  Plaintiff's Exs. 3-4 (dockets #18-5 & #18-6).

7 - FINDINGS AND RECOMMENDATIONS

Over the next couple of years, Gordon continued to ask the DOE for discharge of her student loans based on disability, but these requests were denied apparently based on a lack of documentation. Plaintiff's Ex. 11A, p. 4 (docket #18-7). Some time in 2008, nearly three years after it first ceased seeking an offset in October 2005, the DOE apparently re-initiated an administrative offset of Gordon's SSDI payments. After Gordon requested a hearing, the DOE reviewed her file and on October 21, 2008, notified Gordon that it considered the debt owing and would continue to seek offset of federal or state tax refunds or other payments to collect it. *Id.* On May 7, 2009, the DOT's Federal Offset Unit notified Gordon that it had offset against her loans a $250.00 payment she would have otherwise received under the American Recovery and Reinvestment Act. Plaintiff's Ex. 17 (docket #18-9).

On June 12, 2009, the DOE notified Gordon that she owed a total balance on her student loan account of $64,111.91, including a principal balance of $26,517.66, interest of $25,044.12, and fees and costs of $12,550.13. Plaintiff's Ex. 10, p. 1 (docket #18-7).

## **FINDINGS**

Gordon alleges a host of claims, including statutory violations and tortious actions spanning a decade and a half. In order to better frame the issues before service of the Complaint and voluminous exhibits on any defendant, this court has conducted a through review of Gordon's pleadings and supporting exhibits as well as the relevant statutes and case law. That review reveals that several of the defendants are entitled to have Gordon's claims against them dismissed and that most of Gordon's claims lack a legal basis and must be dismissed with prejudice.

///

**I.  Preliminary Issues**

      The Complaint and exhibits readily disclose that several of Gordon's claims face

jurisdictional bars, including the doctrine of sovereign immunity and statutes of limitations.

      **A.  Immunity**

            **1.  Sovereign Immunity (Federal Defendants)**

      First, Gordon has named as defendants two federal agencies, the DOE and DOT, as well

as two federal employees acting in their official capacities, the Secretary of the DOE (Duncan)

and the Secretary of the DOT (Geithner).  Unless it consents to waive its sovereign immunity,

the United States is immune from suit.  *Dep't of the Army v. Blue Fox, Inc.*, 525 US 255, 260

(1999)*; Lehman v. Nakshian*, 453 US 156, 160 (1981);.  Moreover, "[t]he terms of the United

States' consent to be sued in any court define that court's jurisdiction to entertain the suit. . . .

Any waiver of immunity must be 'unequivocally expressed,' and any limitations and conditions

upon the waiver 'must be strictly observed and exceptions thereto are not to be implied.'"

*Hodge v. Dalton*, 107 F3d 705, 706 (9th Cir 1997), quoting *Lehman*, 453 US at 160-61.

      The doctrine of sovereign immunity applies to federal agencies and to federal employees

acting within their official capacity.  *South Delta Water Agency v. U.S. Dep't of the Interior,*

*Bureau of Reclamation*, 767 F2d 531, 536 (9th Cir 1985).  Thus, a plaintiff may not avoid the bar

of sovereign immunity by naming federal employees in their official capacity:

> It has long been the rule that the bar of sovereign immunity cannot
> be avoided by naming officers and employees of the United States
> as defendants.  Thus, a suit against [federal] employees in their
> official capacity is essentially a suit against the United States.  As
> such, absent express statutory consent to sue, dismissal is required.

*Gilbert v. DaGrossa*, 756 F2d 1455, 1458 (9th Cir 1985) (citations omitted).

9 - FINDINGS AND RECOMMENDATIONS

As discussed in more detail below, most of Gordon's claims are barred by the doctrine of sovereign immunity because the United States has not unequivocally expressed its willingness to be sued for the particular type of claim alleged.

### 2. **Eleventh Amendment Immunity (California Defendants**)

Gordon also names California agencies and a California official as defendants, including the CSAC, its Executive Director (Fuentes-Michel), and the Board of Trustees of California State University.

"The Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F3d 1241, 1245 (9th Cir 1999), *cert. denied*, 528 US 1116 (2000). The CSAC is an agency of the State of California with primary authority "for the administration of state-authorized student financial aid programs available to students attending all segments of postsecondary education." Cal. Educ. Code § 66010.6. Similarly, the Trustees of California State University "are an arm of the state that can properly lay claim to sovereign immunity." *Stanley v. Trs. of Cal. State Univ.*, 433 F3d 1129, 1133 (9th Cir 2006) (citation omitted). California has enacted a Tort Claims Act which provides a limited waiver of sovereign immunity for suits in state court, but has not waived its Eleventh Amendment immunity to suits in federal court. *See Riggle v. State of Cal.*, 577 F2d 579, 585 (9th Cir 1978). Accordingly, Gordon's claims against the CSAC and the Board of Trustees of California State University should be dismissed with prejudice.

"Although the Eleventh Amendment expressly prohibits suits against states in both law and equity, a plaintiff may nonetheless maintain a federal action to compel a state official's

prospective compliance with the plaintiff's federal rights." *Independent Living Center of S. Cal., Inc. v. Maxwell-Jolly*, 572 F3d 644, 660 (9th Cir 2009) (citations omitted).  Gordon does name one California state official as a defendant, namely Fuentes-Michel, the Executive Director of the CSAC.  The only actions allegedly taken by CSAC to Gordon's detriment were the payment of an insurance claim to the lender and subsequent assignment of Gordon's loan account to the DOE.  Both of those actions took place more than 10 years prior to the filing of this lawsuit and so far as can be discerned from Gordon's pleadings and exhibits, CSAC has had no further involvement in the attempted collection of Gordon's student loans.  Under even the most liberal reading of Gordon's pleadings, this court can conceive of no ongoing violation of Gordon's federal rights by CSAC which is amenable to prospective relief.  Moreover, the prospective relief Gordon seeks in her pleadings does not involve relief against Fuentes-Michel or CSAC.  Complaint, ¶¶ 56-59.  Accordingly, all of Gordon's claims against the CSAC, Fuentes-Michel, and the Board of Trustees of California State University should be dismissed with prejudice.

### B.  Time Bar (Private Corporate Defendants)

Another issue readily apparent in Gordon's pleadings is that her allegations cover a time period spanning a decade and a half.  However, each of Gordon's claims are governed by time limitations considerably less generous than 15 years.  In particular, Gordon's claims for FDCPA violations, constitutional violations, and intentional torts are all governed by either one or two year statutes of limitations.  *See Naas v. Stolman*, 130 F3d 892, 893 (9th Cir 1997), quoting 15 USC § 1692k(d) (actions to enforce liability under the FDCPA "may be brought 'within one year from the date on which the violation occurs.'"); *Sain v. City of Bend*, 309 F3d 1134, 1139 (9th Cir 2002) (civil rights claims governed by the state statute of limitations period for personal injury

actions, which in Oregon is two years); ORS 12.110(1) (intentional tort claims governed by a

two year statute of limitations, with any claims based upon fraud or deceit commencing from the

discovery of the fraud or deceit).

During 2007 and most of 2008, Gordon's loans remained in an economic hardship

deferment.  Complaint, ¶ 19(c); Plaintiff's Exs. 4, p. 5 (docket #18-6) (indicating beginning of 12

month period of deferment) and 11-A, p. 3 (docket #18-8) (indicating last offset payment

received October 3, 2005).  On October 21, 2008, however, the DOE notified Gordon that

interest was continuing to accrue at the rates stipulated in the promissory notes, that Gordon was

responsible for collection costs, that administrative offset of federal and state tax refunds and

other payments were authorized, that a borrower could not receive cancellation or reduction of

the loans due to financial hardship, and that the DOE had no evidence that her loans were

improperly declared in default.  Plaintiff's Ex. 11-A, p. 3.  The DOE also notified Gordon that

her loan was due and payable in full due to the default and the terms of the promissory notes and

that she needed to begin making payments.  *Id*, pp. 3-5.

Gordon's pleadings make broad-brush allegations against "defendants" and do not

specify any particular action taken against her by any particular defendant at any particular time.

Moreover, the documents Gordon has submitted do not substantiate any actions taken on

Gordon's loan accounts by any of the four private corporate defendants (FAMS, Van Ru,

Pioneer, CollectCorp) during the one or two year period preceding the filing of this case.  The

October 21, 2008 letter from the DOE indicates that, at that time, CollectCorp had a contract

with the DOE and was "entitled by its contract to a commission on any payment made on this

account while the account is placed with the agency for collection."  Plaintiff's Ex. 11-A, p. 4

(docket #18-8).  However, nothing in the pleadings or in Gordon's voluminous exhibits indicates

any action by or communication with Gordon from any defendant other than the DOE within the

one or two years prior to the filing of this case on November 9, 2009.

Accordingly, this court concludes that, at least with respect to the claims against the four

private corporate defendants (FAMS, Van Ru, Pioneer, CollectCorp) and their respective officers

(Hogan, Rubin, Wickline, and Wilson), Gordon's claims for FDCPA violations, constitutional

violations, and intentional torts should be dismissed without prejudice.  To proceed with any

such claim against these defendants, Gordon must allege some act by them occurring within the

relevant statute of limitations period.

## II.  Analysis of Remaining Claims

### A.  Claims Based on Legal Treatise and Uniform Laws

Gordon alleges several claims under the RESTATEMENT (SECOND) OF CONTRACTS

("RSOC").  Complaint, ¶ 32.  Additionally, she attempts to allege a claim under various

provisions of the Uniform Commercial Code ("UCC").  *Id*, ¶¶ 37-39.  These claims are not well

founded.

The RSOC is a well-recognized legal treatise published by the American Law Institute.

Though oft-cited, the RSOC, as other Restatements of various areas of substantive law, is a non-

binding authority and provides no independent basis for a claim:  "[T]he Restatement is not a

code or a statutory scheme binding upon this court or the litigants before us.  Insofar as we may

find the American Law Institute's distillation of the common law to be accurate and persuasive,

we may draw upon it for guidance in our decisions."  *Adamson v. Bonesteele*, 295 Or 815, 825,

671 P2d 693, 698 (1983); *see also Roop v. Parker Nw. Paving Co.*, 194 Or App 219, 238 n12, 94

P3d 885, 896 n12 (2004) ("the Restatement is not binding on us") (citation omitted).

Moreover, even giving Gordon the benefit of any doubt and construing her claim under

the RSOC as a claim for rescission or reformation of contract, any such claim is barred.  Oregon

requires claims on a contract to be filed within six years and claims for reformation to be filed

within 10 years.  ORS 12.080(1); *Woodriff v. Ashcroft*, 263 Or 547, 552-53, 503 P2d 472, 474-75

(1972) (ORS 12.140 catch-all statute of limitations of 10 years governs claims for reformation).[4]

Gordon's most recent loan was disbursed in the spring of 1993, more than 16 years before

Gordon filed this lawsuit.  By any reckoning, any claim for rescission or reformation of her loans

is long since time-barred.  Accordingly, Gordon's claim for "RSOC Violations" (Complaint,

¶ 32) should be dismissed with prejudice.

Gordon's claim for "UCC Violations" (*id*, ¶¶ 37-39) fares no better.  The UCC is a joint

project of the National Conference of Commissioners on Uniform State Laws and the American

Law Institute.  As the RSOC, the UCC is binding and can form the basis of a claim only insofar

as its provisions are incorporated into state law.  The general UCC provisions cited by Gordon

are largely incorporated into Oregon law.  *See* ORS 71.1020(3) and UCC § 1-302(b) (obligations

of good faith, diligence, reasonableness and care may not be disclaimed by agreement); ORS

71.2050 and UCC § 1-303 (course of dealing and usage of trade); and ORS 71.2030 and UCC

§ 1-304 (every contract within the UCC imposes an obligation of good faith in its performance

or enforcement).  However, missing from Gordon's pleadings is any allegation bringing the

---

[4] Gordon's loans were taken out in California and disbursed to California State University – Northridge, providing a basis to argue that California law applies.  However, California's statutes of limitations for these types of claims is less generous still.  California law requires actions upon contracts to be commenced within four years and actions based upon fraud or mistake to be commenced within three years.  *See Wells Fargo & Co. v. Indust. Indem. Co.*, 160 Or App 166, 176, 980 P2d 1138, 1144 (1999), citing California Code of Civ. Pro., §§ 337-38.

transactions at issue (*i.e.* student loans) within the scope of the UCC's or Oregon's transaction-specific provisions.  The UCC and Oregon law include provisions governing sales of goods (ORS 72.1020), leases (ORS 72A.1020), negotiable instruments (ORS 73.0102), bank deposits and collections (ORS 74.1020), and various other commercial transactions.  However, the applicability of those provisions is limited in scope to the particular types of transactions described.  It is of no moment that the UCC or Oregon law impose an obligation of good faith on transactions within their scope if – as here – the particular transaction at issue is not within their scope.  Accordingly, Gordon's claim for UCC Violations (Complaint, ¶¶ 37-39) should be dismissed with prejudice.

### B. Federal Statutory Claims

#### 1. HEA Claim

Gordon alleges a host of violations of the HEA, including claims that defendants:
(1) failed to provide her with "exit counseling" before repayment; (2) shortened a statutorily-mandated grace period; (3) denied an economic hardship deferment while she was unemployed; (4) denied her an income-sensitive repayment plan; (5) offset her SSDI against her loan balance; (6) added usurious interest to her loan balance; (7) denied her a disability discharge; and (8) added previously discharged loans to her loan balance.  *Id*, ¶¶ 22-30.  However, these claims suffer from a fatal defect, namely that there is no private right of action under the HEA.  "'In light of the extensive enforcement authority given to the Secretary under this program, this court is convinced that Congress intended this mechanism to be the exclusive means for ensuring a lender's compliance with the statutes and regulations.'"  *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1485 (9th Cir 1995), quoting *Saint Mary of the Plains College v. Higher Educ.*

*Loan Program of Kansas, Inc.*, 724 F Supp 803, 808 (D Kan 1989); *see also Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F3d 1113, 1123 (11th Cir 2004) ("It is well-settled that the HEA does not expressly provide debtors with a private right of action."), citing *McCulloch v. PNC Bank, Inc.*, 298 F3d 1217, 1221 (11th Cir 2002) (listing cases that found no express private right of action under the HEA and noting that "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions"). Accordingly, Gordon's claims under the HEA (Complaint, ¶¶ 21-30) should be dismissed with prejudice.

However, "debtors may be able to seek a remedy through [the FDCPA which] applies to debt collectors in general and provides debtors with a remedy for abusive, fraudulent, and deceptive collection practices." *Cliff*, 363 F3d at 1123. Thus, despite the dismissal of her HEA claim, Gordon may have some recourse under the FDCPA to vindicate the abuses about which she complains.

## 2. **FDCPA Claim**

The pleadings contain two specifications of FDCPA claims. First, Gordon alleges that "[d]efendants repeatedly sold and bought Plaintiff's loans from 1993-2005, which was prior to such effective legislation." Complaint, ¶ 31. Next, Gordon alleges that various defendants violated various provisions of the FDCPA during their collection efforts. *Id*, ¶ 33. As explained above, the claims against the four private corporate defendants (FAMS, Van Ru, Pioneer, CollectCorp) and their respective officers (Hogan, Rubin, Wickline, and Wilson) are barred due to a failure to allege violations within the applicable statute of limitations and should be

dismissed without prejudice and with leave to replead for any acts occurring within one year

prior to the filing of the Complaint.

This leaves only the FDCPA claims against the DOE, the DOT and their respective

Secretaries.  Gordon has two insurmountable obstacles alleging a claim under the FDCPA

against these defendants.  First, the FDCPA contains no unequivocal and express waiver of

sovereign immunity.  *Wagstaff v. U.S. Dep't of Educ.*, 509 F3d 661, 664 (5th Cir 2007), *cert*

*denied*, 128 S Ct 2944 (2008); *Ha v. U.S. Dep't of Educ.*, ___ FSupp2d ___, 2010 WL 129673

(DDC January 13, 2010) (citing cases).  Absent such a waiver, Gordon may not sue the United

States or its agencies for FDCPA violations.  Second, the FDCPA explicitly excludes actions

taken by officers and employees of the United States acting in their official capacities to collect

any debt.  *See* 15 USC § 1692a(6)(C) ("term 'debt collector' . . . does not include – . . . (C) any

officer or employee of the United States or any State to the extent that collecting or attempting to

collect any debt is in the performance of his official duties").  Thus, Gordon's FDCPA claims

against the DOE, the DOT, and their respective Secretaries are fatally flawed and should be

dismissed with prejudice.

### 3.  RICO Claim

Gordon also alleges a claim for RICO violations.  Complaint, ¶ 36.  RICO is a general

statute that contains no unequivocally expressed waiver of sovereign immunity for claims

against the United States.  Thus, to the extent Gordon alleges RICO claims against the federal

defendants, those claims should be dismissed with prejudice.

This leaves only the possibility of RICO claims against the four private corporate

defendants and their respective officers.  The premise of this claim is that defendants' actions in

attempting to collect on her student loans were and are an attempt to collect an "unlawful debt," defined under RICO as "unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and . . . incurred in connection with the business of . . . lending money . . . at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate."  18 USC 1961(6).  Gordon further contends that defendants' acts of attempting to collect what she alleges are usurious fees (and therefore an "unlawful debt") constitute "racketeering activity," defined in the relevant statute as "any act or threat involving . . . extortion, . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 USC § 1961(1)(A).

Putting aside the four year statute of limitations on this claim, Gordon's RICO claim fails on several fronts.  First, for purposes of RICO, "extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 USC § 1951(b)(2).  Gordon fails to allege how defendants' actions fall within this definition.  While she has submitted various letters evidencing demands for payment and indicating that defendants would seek an offset against Gordon's SSDI, those actions fall far short of establishing that they induced payment by "actual or threatened force, violence, or fear."  Second, "the legislative history of RICO strongly suggests that section 1962 was not directed toward banking institutions," but was directed toward clear cases of loan-sharking.  *Sundance Land Corp. v. Comty. First Fed. Sav. & Loan Ass'n*, 840 F2d 653, 666-67 n19 (9th Cir 1988) (citations omitted).  More importantly, even assuming Gordon could overcome these obstacles, the HEA explicitly preempts federal and state usury laws.  20 USC § 1078(d).  Without federal or state usury laws available as a means to

show an attempt to collect an "unlawful debt," Gordon's RICO claim fails.  Accordingly, the

RICO claim (Complaint, ¶ 36) should be dismissed with prejudice.

### 4.  Civil Conspiracy Claim

Gordon also alleges a civil conspiracy claim, asserting that defendants conspired to

deceive her and the American people by "fraudulent acts to abuse federal programs and taxpayer

contributions, pursuant to [the] FDCPA."  Complaint, ¶ 40.  She premises this claim upon

defendants' violations of the HEA, FDCPA, RSOC, RICO, and UCC.  However, as explained

above, those claims (except possibly an FDCPA claim against the corporate defendants and their

officers) fail as a matter of law.  To the extent those claims fail, Gordon's conspiracy claim for

those alleged violations also fails as a matter of law.  *See Hart v. Parks*, 450 F3d 1059, 1071 (9th

Cir 2006) (failure to show actual deprivation of constitutional rights resulting from alleged

conspiracy is fatal to conspiracy claims) (citation omitted).  Accordingly, Gordon's civil

conspiracy claim also should be dismissed with prejudice.

### C.  Constitutional Claims

Two of Gordon's claims allege "Additional Federal and Constitutional Violations" and

"Fraud."  Complaint, ¶¶ 42-46.  Although somewhat difficult to decipher, the thrust of these two

claims appears to be that the equal protection and due process rights of a particular class of

borrowers, namely "student loan borrowers," have been violated by the "fraud" perpetrated on

them.[5]  Specifically, student loan borrowers were deceived into believing that their loans would

guarantee better career opportunities, but instead those loans guaranteed only indebtedness,

followed by the onerous collection efforts of GSA contracted collection agencies.  *See*

---

[5]  Although labeled as a "fraud" claim, it is apparent that the premise of both of these claims is that the constitutional rights of student loan borrowers were violated by the "fraud" perpetrated on them by lenders.

Complaint, ¶¶ 42(d), 43(c).  Gordon charges that the key purposes of the HEA, namely to "level the playing field" for lower and middle income families, have been violated because student loan borrowers have suffered irreparable damage to their financial reputation and well-being.  In these claims, Gordon contends that the student loan program for post-secondary education is in drastic and immediate need of reform.  *Id*, ¶ 43.  She spells out her suggestions for such reform in a separate 40 page document, which she incorporates by reference into both of these claims.  *See id*, ¶¶ 42(c) & 45 and "Petition for Corrective Action and Reformation to Prevent Fraud, Waste and Abuse in the Federal Student Loan Program" (Complaint, Attachment 2) (docket #19). There are several problems with these two claims.

First, it is unclear against which defendants these claims are directed.

Second, to the degree Gordon contends that she is a representative member of the class of student loan borrowers injured by the fraudulent marketing, her claim is time-barred.  Her last loan was disbursed in 1993.  As discussed below, the statute of limitations for constitutional claims of this nature is two years.[6]

Third, it is evident that these claims are in the nature of calls for legislative reform, improperly framed as constitutional claims in a court action.  In particular, Attachment 2 (docket #19) is essentially Gordon's analysis of the failings of the student loan program and a discussion of her suggestions for legislative reform.

Thus, these claims (Complaint, ¶¶ 42-46 and "Petition for Corrective Action and Reformation to Prevent Fraud, Waste, and Abuse in the Federal Student Loan Program" (docket #19)) should be dismissed with prejudice.

---

[6] Even if the statute of limitations could be tolled for some reason until November 9, 2007, Gordon fails to allege any basis to do so.

If Gordon intends to allege any other potential constitutional claim seeking damages, she must do so under 42 USC § 1983.  To state a claim under that statute, she must allege:  (1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a person (4) acting under color of state law.  *Crumpton v. Gates*, 947 F2d 1418, 1420 (9th Cir 1991).  Because private parties do not act under color of state law, they cannot be held liable for damages under § 1983 unless one of a few narrow exceptions applies.

In addition, the alleged conduct must comply with the relevant statute of limitations. Because § 1983 does not have an express statute of limitations, federal courts borrow the state statute of limitations for personal injury actions.  *Owens v. Okure*, 488 US 235 (1989); *Wilson v. Garcia*, 471 US 261 (1985).  In this case, "Oregon's two-year statute of limitations for personal injury actions [ORS 12.110(1)] applies" to Gordon's potential § 1983 claims.  *Cooper v. City of Ashland*, 871 F2d 104, 105 (9th Cir 1989).

**D.  Tort Claims**

Finally, Gordon alleges that defendants' actions constitute a series of torts, identified in the pleadings as "unconscionability," negligence, fraud, defamation, invasion of privacy; and intentional infliction of emotional distress.  Complaint, ¶ 41.  However, other than giving the title of those claims, Gordon provides no indication which actions by which defendant(s) form the basis for these claims.

Gordon's "unconscionability" claim fails to state a claim.  Unconscionability may provide a defense to the enforcement of a contract, but does not provide an independent basis for affirmative relief.  *Rosboro Lumber Co. v. Employee Benefits Ins. Co.*, 65 Or App 679, 682, 672

P2d 1336, 1338 (1983), *rev'd on other grounds*, 297 Or 81, 680 P2d 386 (1984).[7]  Accordingly, this claim should be dismissed with prejudice.

As discussed above, the remaining tort claims should be dismissed without prejudice as against the four private corporate defendants and their respective officers based on the statute of limitations.

This leaves only the DOE, the DOT, and their respective Secretaries as potential defendants on the tort claims for negligence, fraud, defamation, invasion of privacy, and intentional infliction of emotional distress.  The only waiver of sovereign immunity for tortious conduct is a limited waiver under the Federal Tort Claims Act, 28 USC §§ 2671-2680 ("FTCA"), which "waives sovereign immunity for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment."  *Hensley v. United States*, 531 F3d 1052, 1056 (9th Cir 2008), *cert denied*, 129 S Ct 2432 (May 26, 2009) (citations omitted).  The FTCA is the exclusive remedy for such claims.  *United States v. Smith*, 499 US 160 (1991); *FDIC v. Craft*, 157 F3d 697, 706 (9th Cir 1998).

In order to encourage administrative settlement of claims and prevent an unnecessary burden on the courts, the FTCA bars claimants from bringing suit until they have exhausted their administrative remedies.  *McNeil v. United States*, 508 US 106 (1993); 28 USC § 2675(a) ("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency.").  To exhaust the administrative remedies, the claim must be "presented in writing to the appropriate Federal

---

[7]  The Oregon Supreme Court has "express[ed] no opinion on the Court of Appeals' conclusion that the doctrine of unconscionability is not a basis for affirmative relief."  *Best v. U.S. Nat'l Bank of Oregon*, 303 Or 557, 561 n3, 739 P2d 554, 556 n3 (1987).

Agency within two years after such claim accrues."  28 USC § 2401(b).  The time begins to run

when the claimant has knowledge of the injury and its cause.  *Rosales v. United States*, 824 F2d

799, 805 (9th Cir 1987).  These requirements are jurisdictional, cannot be waived, and are strictly

construed.  *See Brady v. United States*, 211 F3d 499, 502 (9th Cir), *cert denied*, 531 US 1037

(2000); *Cadwalder v. United States*, 45 F3d 297, 300 (9th Cir 1995); *Jerves v. United States*, 966

F2d 517, 519 (9th Cir 1992).

     Gordon does not allege that she filed her claim with either the DOE or the DOT within

two years of her alleged loss.  Giving Gordon the benefit of the doubt, her October 21, 2008

letter could be construed as a denial of her "claim" opposing the offset.  In that event, Gordon

had only six months to file her court action.  28 USC § 2401(b) (six months after the date of

mailing, by certified or registered mail, of notice of final denial of the claim by the agency to

which it was presented).  This case was filed more than six months later.

     Even if Gordon complied with these jurisdictional prerequisites, the FTCA waives the

United States' sovereign immunity only for certain torts and lists a number of specific exceptions

from its coverage.  28 USC § 2680(a)-(n).  "When a claim falls within a statutory exception to

the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to

hear the case."  *Mundy v. United States*, 983 F2d 950, 952 (9th Cir 1993) (as amended on denial

of rehearing and rehearing *en banc*) (citation omitted).

     In particular, the FTCA does not apply to "[a]ny claim arising out of assault, battery,

false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

misrepresentation, deceit, or interference with contract rights."  28 USC § 2680(h).  In

determining whether a claim "arises out of" one of those torts, courts examine whether the

conduct upon which a plaintiff's claim is based, rather than the label attached to the claim.

*Sabow v. United States*, 93 F3d 1445, 1456 (9th Cir 1996) (citations omitted); *Mt. Homes, Inc. v.
United States*, 912 F2d 352, 356 (9th Cir 1990)

Based on the express language of 28 USC § 2680(h), Gordon cannot sue federal
employees for "misrepresentation" or "deceit." The misrepresentation exception is broadly
construed. *United States v. Neustadt*, 366 US 696, 702 (1961). It applies to negligent, as well as
intentional, misrepresentations, *Block v. Neal*, 460 US 289, 295 (1983), and applies to claims of
negligence both in the misrepresentation and in the conduct underlying the misrepresentation.
*Dorking Genetics v. United States*, 76 F3d 1261, 1264 (2nd Cir 1996), citing *Neustadt*, 366 US at
706-07. Therefore, Gordon's fraud claim is barred.

Although Gordon alleges a claim for defamation, it is excluded by the FTCA's bar
against claims for "libel" or "slander." A defamation claims shares the same essential
characteristics, namely false or misleading communications damaging the reputation of the
plaintiff. The courts draw no distinction between defamation on the one hand, and libel and
slander on the other. *See e.g., Siegert v. Gilley*, 500 US 226, 234 (1991) (noting the exemption
in the FTCA for "defamation"); *Sabow*, 93 F3d at 1456 (noting that "defamation" is an excepted
tort under 29 USC § 2680(h)).

Moreover, courts consistently have held that claims for "false light" invasion of privacy
are barred by the libel and slander exception. *Johnson v. Sawyer*, 47 F3d 716, 732 n34 (5th Cir
1995); *Metz v. United States*, 788 F2d 1528, 1535 (11th Cir), *cert. denied*, 479 US 930 (1986).
To the extent that an intentional or negligent infliction of emotional distress claim is based on
false statements, it, too, is barred by the FTCA. *Thomas-Lazear v. F.B.I.*, 851 F2d 1202, 1206-07

(9th Cir 1988) (negligent infliction of emotional distress claim barred as a claim "arising out of"

slander when it was nothing more than a restatement of the slander claim barred by § 2680(h)).

Assuming that Gordon has exhausted her administrative remedies, that leaves only the

negligence claim alleged against the DOE, the DOT, and their respective Secretaries.  However,

Gordon has failed to name the correct parties for such a negligence claim.  Under the FTCA, the

United States is the only proper defendant in cases alleging tortious conduct.  *Kennedy v. U.S.

Postal Serv.*, 145 F3d 1077, 1078 (1998).  Accordingly, the DOE, the DOT, and their respective

Secretaries are improperly named parties on all tort claims claim and must be dismissed with

prejudice.

## RECOMMENDATIONS

For the reasons stated above, the following claims should be dismissed *with prejudice*:

(1) all claims alleged against the California defendants (CSAC, Board of Trustees of

California State University, and Fuentes-Michael);

(2) the claims alleging violations of the RSOC and the UCC (Complaint, ¶¶ 32, 37-39);

(3) the claim alleging violations of the HEA (*id,* ¶¶ 22-30);

(4) the FDCPA claim against the DOE, the DOT, and their respective Secretaries

(Duncan and Geithner) (*id*, ¶ 31);

(5) the claim alleging RICO violations (*id*, ¶ 36);

(6) all specifications of the civil conspiracy claim (*id*, ¶ 40);

(7) the "constitutional" and "fraud" claims to the extent they are premised upon a need

for legislative reform (*id*, portions of ¶¶ 42-46 and "Petition for Corrective Action and

Reformation to Prevent Fraud, Waste, and Abuse in the Federal Student Loan Program" (docket #19));

(8) the "unconscionability" claim (Complaint, part of ¶ 41);

(9) all tort claims alleged against the DOE, the DOT, and their respective Secretaries (Duncan and Geithner) (*id*, part of ¶ 41).

The following claims should be dismissed *without prejudice* and with leave to replead them in an Amended Complaint filed within 30 days after issuance of this court's final order on these Findings and Recommendations.:

(1)  the FDCPA claim against the corporate defendants (FAMS, Van Ru, Pioneer, and CollectCorp) and their respective officers (Hogan, Rubin, Wickline, and Wilson) for acts occurring after November 9, 2008 (*id*, ¶¶ 33-5);

(2) all tort claims (except "unconscionability") against the corporate defendants (FAMS, Van Ru, Pioneer, and CollectCorp) and their respective officers (Hogan, Rubin, Wickline, and Wilson) for acts occurring after November 9, 2007 (*id*, part of ¶ 41); and

(3) assuming that she has timely exhausted her administrative remedies, a negligence claim under the FTCA against the United States.

///

///

///

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge.  Objections, if any, are due March 1, 2010.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

The Findings and Recommendations is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 11th day of February, 2010.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge